ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
CALENDAR: 05
PAGE 1 of 6
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

UCA GROUP, INC. f/k/a )
UNIVERSAL SPC, INC., )
)
      Plaintiff, )
)
          v. )    Case No.
)
AMERICAN INTERNATIONAL GROUP, )
INC. and LEXINGTON INSURANCE )
COMPANY, )
)
      Defendants. )

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff UCA Group, Inc. f/k/a Universal SPC, Inc., by its undersigned counsel, Schoenberg Finkel Newman & Rosenberg, LLC, as and for its Complaint against Defendants American International Group, Inc. and Lexington Insurance Company, states and alleges as follows:

### PARTIES, JURISDICTION & VENUE

1.      UCA Group, Inc. f/k/a Universal SPC, Inc. ("UCA") is a corporation organized under the law of Illinois with its principal place of business located in Elgin, Illinois.

2.      American International Group, Inc. ("AIG") is a corporation organized under the law of Delaware with its principal place of business located in New York, New York.

3.      Lexington Insurance Company ("Lexington) is a corporation organized under the law of Delaware with its principal place of business located in Boston, Massachusetts. Lexington is a member company of AIG.

4.      This Court has personal jurisdiction over AIG and Lexington pursuant to 735 ILCS 5/2-209(a)(1), (4) and (7) because the facts giving rise to UCA's claims arise out of AIG's

1



and Lexington's transaction of business within this State, an insurance policy providing coverage for property located in this State, and the performance of a contract substantially connected with this State.

5.     Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 because the transaction giving rise to UCA's claims occurred in Cook County, and all defendants are nonresidents of this State.

## FACTS COMMON TO ALL COUNTS

6.     In September 2013, UCA began conducting operations at the property commonly known as 1901 S. Rockwell Street, in Chicago, Illinois, which includes a large industrial building (the "Property"). Since that time, UCA has utilized the Property as a storage warehouse and has conducted business operations at the Property, including logistics and operational support.

7.     The Property was insured under a commercial property insurance policy issued by Lexington (a member company of AIG), Policy No. 44269312-03 (the "Policy"), which covered the time period February 25, 2014 to February 25, 2015. A copy of the Policy is attached hereto as **Exhibit 1**. The total premium paid for the Policy was $20,116.00.

8.     On or about August 13, 2014, the Property was burglarized, resulting in substantial damages due to vandalism and stolen property. UCA promptly reported the incident to the authorities and retained private security contractors to monitor and secure the Property (and the equipment, fixtures and other personal property located inside) for the next several months. Despite the increased security, the Property was subsequently burglarized and vandalized on several occasions between August 2014 and March 2015, resulting in additional damage to the Property.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 2 of 6

2

9. UCA submitted a claim to Lexington seeking coverage under the Policy for the damage caused by the vandalism and stolen property that began on August 13, 2014.

10. Subsequently, AIG assigned claims adjuster Joshua Alvarez to process UCA's claim on behalf of Lexington.

11. On or about April 22, 2015, Mr. Alvarez conducted an inspection of the Property.

12. By means of an e-mail dated May 13, 2015 from Alvarez on behalf of Defendants to Johnnie Watson at UCA (the "Denial of Coverage Letter"), Alvarez sent a letter denying coverage for UCA's claim (the "Denial of Coverage Letter"), a copy of which e-mail and letter is attached hereto as **Exhibit 2.** The Denial of Coverage Letter is incorrectly dated April 24, 2014. The letter was actually sent in 2015, not 2014.

13. In the Denial of Coverage Letter, AIG asserts that the Property was vacant or unoccupied for more than 60 days prior to the first reported break-in, and, therefore, AIG is not liable under the terms of Policy. (Ex. 2, at p. 2).

14. Specifically, in the Denial of Coverage Letter, AIG refers to Paragraph 36 of the Manuscript All Risk Form in the Policy, which states as follows:

36. VACANCY AND/OR UNOCCUPANCY

Unless otherwise endorsed hereto, this Company shall not be liable for loss or damage to any property that has remained vacant or unoccupied for a period of sixty (60) or more days.

15. According to AIG, the "damages to the building are not covered under your claim due to the fact that the building has been unoccupied and or vacant for over 60 consecutive days prior to the first incident taking place." (Ex. 2, at p. 2)

16. At the conclusion of the letter AIG states that UCA has until April 24, 2017 to file any suit or action on the policy with regard to this claim.

3

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 3 of 6

17.     By letter dated June 15, 2015, UCA informed AIG that the assertions in the Denial of Coverage Letter are incorrect. A copy of UCA's June 15, 2015 Letter is attached hereto as **Exhibit 3**. UCA explained that the Property was never unoccupied or unattended, that UCA used the Property as a storage warehouse during the relevant time period, and that UCA employees and a supervisor habitually visited the Property at least 3-4 times a week. (Ex. 3)

18.     UCA further explained that the Denial of Coverage Letter contains erroneous statements and information which AIG purportedly used as the basis for its decision to deny UCA's claim. (Ex. 3). Specifically, UCA explained that AIG's Denial of Coverage Letter referred to erroneous information allegedly provided to Mr. Alvarez by the UCA employee who provided Mr. Alvarez access to Property during his inspection on April 22, 2015. (Ex. 3). UCA explained that the particular employee did not have knowledge regarding the specifics of the claim, the building usage, or any timeline of events concerning the claim, and that any information which Mr. Alvarez purportedly received from the employee was incorrect. (Ex. 3). Accordingly, UCA requested that AIG reopen and reinvestigate the claim.

19.     On June 16, 2015, AIG responded via e-mail to UCA's June 15, 2015 Letter, affirming its decision to deny coverage. A copy of AIG's June 16, 2015 e-mail is attached as **Exhibit 4**. Specifically, AIG stated that "having employees visit 3-4 times a week along with a security detail and various contractors in the building at various times" does not mean the Property was occupied. (Ex. 4). AIG analogized the situation to "an empty house that is being showed (sic) by a realtor various times throughout the day and has a maintenance person check on it does not constitute a house being occupied."

20.     AIG's conclusion that the Property was vacant and/or unoccupied for sixty or more days prior to the date of the loss is incorrect and unreasonable.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 4 of 6

4

21.     The amount of the damages and stolen property covered under the Policy is in excess of $200,000.

## COUNT I
## Declaratory Judgment

22.     UCA restates the allegations in paragraphs 1 thru 21 as if fully set forth herein.

23.     Pursuant to 735 ILCS 5/2-701, an actual controversy exists between the parties as to whether the Policy provides coverage for UCA's claim. A declaration of the parties' rights under the Policy would terminate the entire controversy or a substantial portion of the controversy between the parties.

24.     AIG and Lexington have materially breached the Policy by denying coverage based on their erroneous conclusion that the Property remained vacant and/or unoccupied for a period of 60 or more days.

25.     UCA has performed all obligations and satisfied all conditions precedent to obtain coverage under the Policy.

WHEREFORE, Plaintiff UCA Group, Inc. f/k/a Universal SPC, Inc. prays that the Court enter a judgment declaring that UCA's claim is covered under the Policy, that the Property was not vacant or unoccupied for more than 60 days, that AIG and Lexington's decision to deny coverage based on its interpretation of the vacancy and/or occupancy provision in the Policy is erroneous, and for such other relief as this Court deems equitable and just.

## COUNT II
## Breach of Contract

26.     UCA restates the allegations in paragraphs 1 thru 25 as if fully set forth herein.

27.     The Policy constitutes a valid contract between the parties.

28.     UCA performed its obligations under the terms of the Policy at all times.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 5 of 6

5

29.    AIG and Lexington's interpretation of the vacancy/occupancy provision in the Policy and denial of coverage constitutes a breach of contract.

30.    The amount of coverage to which UCA is entitled under the Policy is in excess of $200,000.

31.    As a result of AIG and Lexington's refusal to perform its obligation to provide coverage for UCA's claim, UCA has been damaged in an amount in excess of $200,000.

WHEREFORE, UCA Group, Inc. f/k/a Universal SPC, Inc., prays that the Court enter judgment against Defendants American International Group, Inc. and Lexington Insurance Company in an amount in excess of $200,000, plus pre-judgment interest, costs and such further relief the Court deems equitable and just.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 6 of 6

Respectfully submitted,

**UCA GROUP, INC. f/k/a**
**UNIVERSAL SPC, INC.**

By: *Matthew P. Tyrrell*
One of its Attorneys

Dated: August 22, 2016

Daniel E. Beederman
Matthew P. Tyrrell
SCHOENBERG FINKEL NEWMAN & ROSENBERG, LLC
222 S. Riverside Plaza, Suite 2100
Chicago, Illinois 60606
Firm No. 43280
Counsel for UCA Group, Inc. f/k/a Universal SPC, Inc.

# EXHIBIT 1

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
CALENDAR: 05
PAGE 1 of 62
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## *Lexington Insurance Company*
Administrative Offices: 100 Summer Street
Boston, MA 02110-2103
(hereinafter "the Company")

## CERTIFICATE OF RENEWAL

Policy No.:     44269312 - 03          Certificate Renewal No.:   44269312 - 02

The above referenced Policy is renewed as of the effective date on the Declaration Page incorporated herein by reference and attached to this Certificate of Renewal. This Certificate of Renewal, the attached Declaration Page, the Policy referenced above along with its endorsements (but without its original Declaration Page which is superceded by the attached Declaration Page), and any endorsement issued pursuant to this Certificate of Renewal comprise the entire terms and conditions of the renewal policy. The terms and conditions of the renewal policy cannot be waived or changed except by written endorsement issued by the Company and made part of this Certificate of Renewal.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 2 of 62

_____
Authorized Representative or
Countersignature (in states where Applicable)

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation or by calling 1-800-706-3102.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 3 of 62

91222 (4/13)

**Lexington Insurance Company**

ANY REFERENCE IN THE POLICY FORM TO CONTACT IN WRITING THE COMPANY'S CLAIM OR LEGAL DEPARTMENTS SHOULD USE THE ADDRESS PROVIDED BELOW.

Attn: Claim Department

Lexington Insurance Company
100 Summer Street
Boston, Massachusetts 02110-2103

Attn: Legal Department

Lexington Insurance Company
100 Summer Street
Boston, Massachusetts 02110-2103

Inland Marine, Motor Truck Cargo and Vehicle Physical Damage Loss Reporting

First Notice of Loss Reporting via email:

'jerseycitycommercialproperty@AIG.com'

Office Mailing address:

Chartis Claims Inc.
101 Hudson Street, 20th Floor
Jersey City, NJ 07302

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE

# LEXINGTON INSURANCE COMPANY

Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110-2103
(hereinafter called the Company)

### COMMERCIAL PROPERTY POLICY
### DECLARATIONS

**POLICY NUMBER: 44269312 - 03**   **RENEWAL OF: 44269312 - 02**

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 5 of 62

**ITEM 1.**   Named Insured:   UNIVERSAL SPC, INC.
D/B/A:   UNIVERSAL SPC, INC.
Address:   412 N STATE ST

ELGIN, IL 60123-2877

**ITEM 2.**   **Policy Period:**
FROM: 02/25/2014   TO: 02/25/2015
at 12:01 A.M. Standard Time at the address of the named insured shown above.

**ITEM 3.**   Limit of Insurance:
$ 6,710,000 Per Occurrence

Total Premium   $ 20,116.00   Minimum Earned Premium   $ 5,029.00

**ITEM 4.**   Perils:
Per Forms Attached
All Risks of Direct Physical loss or Damage excluding Flood, excluding Earthquake, and including Equipment Breakdown.

**ITEM 5.**   Description of Property Covered:   Coinsurance
See Schedule Attached

Stamping Fee - IL: $20.00
Surplus Lines Tax - IL: $704.00
Fire Tax - IL: $101.00

**ITEM 6.**   Mortgagee Clause: Loss, if any shall be payable to:
See schedule on file with company

Loss Payee: Loss, if any shall be payable to:

**ITEM 7.**   Forms Attached:

See attached forms schedule

PRPDEC (ED.01/91
LX1119

Authorized Representative OR
Countersignature (In states where applicable)

**Notice to Policyholder: This contract is issued, pursuant to Section 445 of the Illinois Insurance Code, by a company not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund.**

## Form Schedule

| | |
|---|---|
| Named Insured: | UNIVERSAL SPC, INC. |
| D/B/A | UNIVERSAL SPC, INC. |

Policy Number:   44269317 - 03                    Effective Date:   02/25/2014

### Form Number                                           Title

| Form Number | | Title |
|---|---|---|
| Cover Broker Letter | | Covernote |
| Cover Policy | | Covernote |
| CertRenewal | | Certificate of Renewal |
| 91222 | 0413 | Policyholder Notice |
| Claim Legal Notice | | Claim Legal Notice |
| PRP Dec LX1119 | 0191 | Commercial Property Policy Declarations |
| FIRE | 0307 | Fire |
| EquipmentBreakdown | 0904 | Equipment Breakdown Coverage Schedule |
| MSCPTEB | 0904 | Equipment Breakdown Coverage |
| Encorsement | | Manuscript Changes |
| PRS015 | 0806 | Pollution, Contamination, Debris Removal Exclusion Endorsement |
| PRS014 | 0191 | Occurrence Limit of Liability |
| PRS019 | 0194 | Standard Property Conditions |
| PR9540 | 0902 | Schedule of Limits, Sublimits and Deductibles |
| LX9512 | 0802 | Mold/Fungus Exclusion |
| ISD415 | 0187 | Protective Safeguards |
| PRS514 | 0902 | Property Endorsement |
| 69813 | 0298 | Property /Boiler & Machinery Millennium Endorsement |
| 96556 | 0108 | Terrorism Notice |
| PR9545 | 0806 | Manuscript All Risk Form |
| ANI | 1197 | Additional Named Insured Mid-Term Endorsement |
| PRG2023 | 0705 | Service of Suit Condition |
| 89644 | 0613 | Economic Sanctions Endorsement |

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070

# FIRE

## Schedule of Covered Locations

**Policy Number: 44269312 - 03**

**Issued to: UNIVERSAL SPC, INC.**
d/b/a:  UNIVERSAL SPC, INC.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 7 of 67

| <ins>Description of Premises</ins> | | <ins>Limit</ins> | <ins>Percent of Coins</ins> |
|---|---|---|---|
| Loc # 1, IL, 412 North State Street, Bldg #1 | Building | $1,025,600 | 0% |
| Elgin, IL  60123 | Personal Property | $2,000,000 | |
| | Business Interruption | $1,500,000 | |
| | Extra Expense | Included | |
| | Rental Value | Included | |
| Loc # 1, IL, 412 North State Street, Bldg #2 | Building | $306,900 | 0% |
| Elgin, IL  60123 | Personal Property | $125,000 | |
| | Business Interruption | $2,500 | |
| | Extra Expense | Included | |
| | Rental Value | Included | |
| Loc # 2, IL, 1901 South Rockwell, Bldg #1 | Building | $750,000 | 0% |
| Chicago, IL  60608 | Personal Property | $1,000,000 | |
| | Business Interruption | Not Covered | |
| | Extra Expense | Included | |
| | Rental Value | Included | |

## EQUIPMENT BREAKDOWN COVERAGE SCHEDULE
### (Lexington Manuscript All Risk)

*The Company shall not be liable for more than the Equipment Breakdown Limit shown in this Schedule for loss, damage or expense arising from any "one accident."*

*These coverages apply to all locations covered on the policy, unless otherwise specified.*

*Wherever the term "Company" is used in the Equipment Breakdown Coverage Endorsement and the form to which it is attached, it shall also mean "Insurer."*

| Coverages | Limits |
|---|---|
| Equipment Breakdown Limit | $6,710,000 |

Sublimits of Liability (sublimits are within, and do not increase, the Equipment Breakdown Limit stated above):

| | |
|---|---|
| Business Interruption | $1502500 |
| Extra Expense | $Included |
| Rental Value | $Included |
| "Soft Costs" | $Not Covered |
| Contingent Business Interruption Suppliers and/or Receivers of the Insured's Goods or Services | $Not Covered |
| Expediting Expenses | $100000 |
| Hazardous Substances | $100000 |
| Spoilage | $100000 |
| Data Restoration | $100000 |
| Demolition and Increased Cost of Construction | $100000 |
| "Service Interruption" | $250000 |
| Newly Acquired Property | $250000 |

**Deductibles**

| | |
|---|---|
| **Combined, All Coverages** | **$5000** |

If a Combined, All Coverages deductible is not entered above, the following deductibles are applicable:

| | |
|---|---|
| Direct Coverages | $0 |

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 8 of 62

Indirect Coverages

$0
or __0__ hrs.
or __0__ times ADV

"Soft Costs"

__0__ Days

Spoilage
(if no entry, see Direct Coverages)

$0

or __0__ % of loss,$ __0__ minimum

## Other Conditions
**********************************************************************

Extended Period of Restoration:0 days

Newly Acquired Property 0 days

The interruption must exceed 0 hours for there to be any liability for any coverage under Spoilage provision (2)(c)(iv) or "Service Interruption" caused by an "accident."

As respects "Service Interruption" or Spoilage provision (2)(c)(iv), the "accident" must occur to equipment within 0 of the premises for coverage to apply.

As respects "Service Interruption" or Spoilage provision (2)(c)(iv), the loss, damage or expense must be caused by an "accident" to equipment that is owned by a utility, landlord or other supplier with whom the Insured has a contract to supply specified services for coverage to apply.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 9 of 9

lexalrisksch.doc 9/28/04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EQUIPMENT BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:
MANUSCRIPT ALL RISK FORM

The term Peril Insured Against includes the additional coverage Equipment Breakdown as described and limited below.

(1)     This policy covers direct physical damage to covered property that is the direct result of an "accident." As used in this additional coverage, "accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

(a)     mechanical breakdown, including rupture or bursting caused by centrifugal force;

(b)     artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

(c)     explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Insured, or operated under the control of the Insured;

(d)     loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

(e)     loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

(2)     Unless otherwise shown in the Schedule, the following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.

(a)     Expediting Expenses
With respect to damaged covered property, the Company shall be liable for the reasonable extra cost to:
(i)      make temporary repairs; and
(ii)     expedite permanent repairs or permanent replacement.
The Company's total liability for loss, damage or expense under this coverage is $100,000 unless otherwise shown in the Schedule.

(b)     Hazardous Substances
The Company shall be liable for the additional cost to repair or replace covered property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property.
This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in (2)(c)(ii)

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 10 of 62

below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

The Company's total liability for loss, damage or expense under this coverage, including actual loss of Business Interruption sustained, necessary Extra Expense incurred, and loss of Rental Value, is $100,000 unless otherwise shown in the Schedule. Any coverage under the policy for decontamination or pollution cleanup does not apply to this endorsement. Exclusion R.(1) of the form to which this endorsement is attached does not apply to this Hazardous Substances coverage.

(c)     Spoilage
        The Company shall be liable:
        (i)     for physical damage to "perishable goods" due to spoilage;
        (ii)    for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;
        (iii)   for any necessary expenses incurred to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.
        (iv)    for physical damage to "perishable goods" due to spoilage caused by an "accident" to equipment that is owned by a utility, landlord, or other supplier of any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam. Unless otherwise indicated in the Schedule, the "accident" must occur to equipment within one statute mile of the premises for coverage to apply.

        If the Insured is unable to replace the "perishable goods" before its anticipated sale, payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident," less discounts and expenses that otherwise would have been incurred. Otherwise payment will be determined in accordance with the Valuation provision of the policy.
        The Company's total liability for loss, damage or expense under this coverage is $100,000 unless otherwise shown in the Schedule.

(d)     Data Restoration
        The Company shall be liable for the necessary cost to research, replace and restore lost "data."
        The Company's total liability for loss or expense under this coverage, including actual loss of Business Interruption sustained, necessary Extra Expense incurred and loss of Rental Value, is $100,000 unless otherwise shown in the Schedule.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 11 of 62

(3)    BUSINESS INTERRUPTION, RENTAL VALUE, EXTRA EXPENSE, "SOFT COSTS", "SERVICE INTERRUPTION"

As respects Equipment Breakdown coverage only, coverage for Business Interruption, Extra Expense, "Soft Costs", Rental Value and/or "Service Interruption" provided herein shall apply as respects the Business Interruption, Extra Expense and Rental Value clauses as well as "Soft Costs" and "Service Interruption", and any Additional Provisions, applicable to Business Interruption, Extra Expense, Rental Value, "Soft Costs" and "Service Interruption", of the policy to which this endorsement is attached, solely as a result of loss caused by or resulting from an "accident" as defined herein.

As respects Equipment Breakdown coverage only, the Business Interruption, Extra Expense, "Soft Costs", "Service Interruption", Rental Value provisions, and any Additional Provisions applicable to Business Interruption, Extra Expense, "Soft Costs", "Service Interruption" and Rental Value, of the policy to which this endorsement is attached are amended as follows:

(a)    The Company's total liability for loss of Business Interruption sustained, necessary Extra Expense incurred, loss of Rental Value and "Service Interruption" is the amount shown in the Schedule.

(b)    If so indicated in the Schedule, Contingent Business Interruption does not apply to Equipment Breakdown coverage or applies only up to the limit specified on the Schedule.

(c)    The Period of Restoration provision is amended to read as follows:

Period of restoration means the period of time that:

(i)     Begins with the date of direct physical loss or damage by any of the perils covered herein, at the described premises; and

(ii)    Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality, plus the number of days, if any, indicated in the Schedule for Extended Period of Restoration.

Period of restoration does not include any increased period required due to the enforcement of any ordinance or law that:

(i)     Regulates the construction, use or repair, or requires the tearing down, of any property; or

(ii)    Requires the Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 12 of 62

respond to, or assess the effects of "contaminants" or "pollutants" as defined in Section 9. Perils Excluded, Paragraph Q.

The expiration date of this policy will not cut short the period of restoration.

(d)  If any "Soft Costs" coverage is provided under the policy attached hereto, "Soft Costs" is extended to the coverage provided by this endorsement. The Company's total liability for loss of "Soft Costs," is $50,000 unless otherwise shown in the Schedule.

(e)  As respects "Service Interruption":
Unless otherwise indicated in the Schedule, the "accident" must occur to equipment within one statute mile of the premises for coverage to apply.

(4)  ADDITIONAL PERILS EXCLUDED
The following exclusions are in addition to those in the policy attached hereto.
(a)  The Company shall not be liable for loss, damage or expense caused by or resulting from:
    (i)    failure to use all reasonable means to protect covered property from damage following an "accident";
    (ii)   any defect, programming error, programming limitation, computer virus, malicious code, loss of "data," loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind. But if an "accident" results, the Company shall be liable for the resulting loss, damage or expense; or
    (iii)  any of the following tests:
           a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment.

(b)  With respect to this coverage, the Company shall not be liable for loss, damage or expense caused by or resulting from: fire, lightning; windstorm or hail; explosion, except as specifically provided in (1)(c) above; smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; breakage of glass; falling objects; weight of snow, ice or sleet; freezing; collapse; molten material; flood or earth movement.

(c)  With respect to Business Interruption, Rental Value, Extra Expense, "Soft Costs" and "Service Interruption" coverages, the Company shall not be liable for:
    (i)    loss caused by failure of the Insured to use due diligence and dispatch and all reasonable means to resume business; or
    (ii)   any increase in loss resulting from an agreement between the Insured and customer or supplier.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 13 of 62

LEX MSCPT EB 2004                                    4

(d)    The Company shall not be liable under this endorsement for any loss or damage to animals.

(5)    **DEDUCTIBLES**
Only as regards Equipment Breakdown Coverage, the DEDUCTIBLES provision is deleted and replaced with the following:

(a)    Deductibles for Each Coverage
- (i)    Unless the Schedule indicates that the deductible is combined for all coverages, multiple deductibles may apply to any "one accident."
- (ii)    The Company shall not be liable for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the Schedule. The Company shall then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.
- (iii)    If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

(b)    Direct and Indirect Coverages
- (i)    Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Schedule.
- (ii)    Unless more specifically indicated in the Schedule:
  1.    Indirect Coverages Deductibles apply to Business Interruption, Rental Value and Extra Expense loss; and
  2.    Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this endorsement.

(c)    Application of Deductibles
- (i)    Dollar Deductibles
  The Company shall not be liable for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable Deductible shown in the Schedule. The Company shall then be liable for the amount of loss, damage or expense in excess of the applicable Deductible or Deductibles, up to the applicable Limit of Liability.
- (ii)    Time Deductible
  If a time deductible is shown in the Schedule, the Company shall not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.
- (iii)    Multiple of Average Daily Value (ADV)

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 14 of 62

If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

The ADV (Average Daily Value) shall be the net profit (or loss) and expenses (as described in any Business Interruption coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" occurred, divided by the number of working days in that period. No reduction shall be made for the net profit (or loss) and expenses not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the net profit (or loss) and expenses of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the period of restoration. The number indicated in the Schedule shall be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

(iv) Percentage of Loss Deductibles

If a deductible is expressed as a percentage of loss, the Company shall not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

(6) DEFINITIONS

(a) "Boilers and Vessels" means:

(i) Any boiler, including attached steam, condensate and feedwater piping; and

(ii) Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

This term does not appear elsewhere in this endorsement, but may appear in the Schedule.

(b) "Covered Equipment"

(i) "Covered equipment" means, unless otherwise specified in the Schedule, covered property:

1. that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

2. which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 15 of 62

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 16 of 62

(ii)    None of the following is "covered equipment":

    1.    structure, foundation, cabinet, compartment or air supported structure or building;

    2.    insulating or refractory material;

    3.    sewer piping, buried vessels or piping, or piping forming a part of a sprinkler system;

    4.    water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

    5.    "vehicle" or any equipment mounted on a "vehicle";

    6.    satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

    7.    dragline, excavation or construction equipment; or

    8.    equipment manufactured by the Insured for sale.

(c)    "Data" means information or instructions stored in digital code capable of being processed by machinery.

(d)    "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

(e)    "Media" means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

(f)    "One Accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

(g)    "Perishable Goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

(h)    "Production Machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. However, "production machinery" does not mean any fired or unfired pressure vessel other than a cylinder containing a movable plunger or piston.

This term does not appear elsewhere in this endorsement, but may appear in the Schedule.

(i)    "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

(j)    "Service Interruption" means the Extension of Coverage provided in the form to which this endorsement is attached for interruption of business conducted by the Insured resulting from loss or damage to public utility plants, transformers or switching stations, substations furnishing heat, light, power, water, telephone or gas to the Insured's premises, but within one statute mile of the premises unless otherwise shown in the Schedule.

(k)    Any definition of "soft costs" is deleted and replaced with the following:
"Soft Costs" means:

(i)    Additional property and real estate taxes incurred for the period of time that construction extends beyond the projected completion date;

(ii)    Additional interest on money borrowed to finance repair or construction;

(iii)    Additional promotional and advertising expense;

(iv)    Expenses necessarily incurred by the Insured to reduce loss, up to the amount by which loss otherwise payable is reduced; or

(v)    Additional accounting and legal fees.

(7)    CONDITIONS

The following conditions are in addition to those in the policy attached hereto.

(a)    Suspension
Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any representative of the Company may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by mailing or delivering a written notice of suspension to:

(1)    the last known address of the Insured; or

(2)    the address where the "covered equipment" is located.

Once suspended in this way, the insurance can be reinstated only by an endorsement for that "covered equipment." If the Company suspends the insurance, the Insured will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if the Company has not yet made or offered a refund.

(b)    Environmental, Safety and Efficiency Improvements
If "covered equipment" requires replacement due to an "accident," the Company shall pay the additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.
However, the Company shall not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 17 of 62

LEX MSCPT EB 2004        8

condition does not increase any of the applicable limits. This condition does not apply to any property to which Actual Cash Value applies.

(c)   Coinsurance
If a coinsurance percentage is shown in the Schedule for specified coverages, the following condition applies.
The Company shall not pay for the full amount of the loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, the Company shall determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. The Company shall then subtract the applicable deductible. The most the Company will be liable for is the resulting amount, or the applicable limit. The Company shall not pay for the remainder of the loss. Coinsurance applies separately to each insured location.

The Company's total liability for loss, damage or expense under this endorsement arising from any "one accident" is the Equipment Breakdown Limit shown in the Schedule.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 18 of 62

LEX MSCPT EB 2004.doc
9/28/04

**This endorsement, effective  02/25/2014       at 12:01 AM**

**Forms a part of policy no.: 44269312 - 03**

**Issued to:  UNIVERSAL SPC, INC.**

**D/B/A: UNIVERSAL SPC, INC.**

**By: Lexington Insurance Company**

IN CONSIDERATION OF THE PREMIUM CHARGED IT IS HEREBY UNDERSTOOD AND AGREED THAT CONDITIONAL TOTAL TERRORISM EXCLUSION ENDORSEMENT

(APPLICABLE UPON TERMINATION OF THE TERRORISM INSURANCE PROGRAM)

A.      The Terrorism Insurance Program established under The Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2007 (collectively, "TRIA") is scheduled to terminate on December 31, 2014. In the event "TRIA" is not reauthorized during the policy period, then the following exclusion is added to the Policy as of December 31, 2014:

This insurance also does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of "terrorism" regardless of any other cause or event contributing concurrently or in any sequence to the loss. "Terrorism" means any act that:

(1)     involves the use of force or violence against person or property;

(2)     is dangerous to human life or property; or

(3)     interferes with or disrupts an electronic or communication system; and

(4)     is undertaken by any group or person, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

(A)     a government;

(B)     the civilian population of a country, state or community; or

(C)     to disrupt the economy of a country, state or community.

B.      If the Exclusion provided under Paragraph A. above takes effect during the policy period:

(1)     The Exclusion will immediately supersede any other terrorism provisions contained in the Policy or attached by endorsement thereto; and

(2)     We will return a pro rata portion of the premium that you paid to us for terrorism coverage. Such return premium will be calculated based on the date TRIA terminates in relation to the number of days remaining until the expiration of your Policy.

C.      In the event, TRIA is reauthorized, but is amended as a part of its reauthorization, we reserve the right to modify the policy, as of the effective date of such amendment to TRIA, with the sole purpose of revising the policy to be consistent with the provisions of the amended statute reauthorizing TRIA.

D.      Exception Covering Certain Fire Losses - If "terrorism", as defined in Paragraphs A (1) through (4) above, results in fire, we will pay for such loss or damage caused by such fire, subject to all of the policy's applicable terms and conditions; but only if:

(1)     Such covered property is located in a State of the United States, the District of Columbia, Puerto Rico, or a territory or possession of the United States, that pursuant to the Standard Fire Policy, statute, regulation or other law, prohibits the exclusion of a fire following an act of "terrorism"; and

(2)     Such coverage for fire applies only to direct physical loss or damage to covered property insured hereunder, and no other coverage, including but not limited to, business income and extra expense coverage.

Furthermore, in accordance with the terms and conditions of the applicable Standard Fire Policy, the valuation of such covered property resulting from direct physical loss or damage caused by fire following "terrorism" may be limited the lesser of the:

(1)     Actual cash value of the covered property at the time of loss; or

(2)     Cost to repair or replace at the covered property at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and obsolescence

Without allowance for any increased cost of repair or replacement by reason of any ordinance or law.

All other terms and conditions of the policy are the same.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
CALENDAR(5)

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
**Authorized Representative or Countersignature**

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 20 of 62

## POLLUTION, CONTAMINATION, DEBRIS REMOVAL
## EXCLUSION ENDORSEMENT

### 1. Property Not Covered

This policy does not cover land, land values or water.

### 2. Pollution and Contamination Exclusion.

This policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy.

Nevertheless, if fire is not excluded from this policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this policy arising directly from that fire is insured, subject to the provisions of this policy.

CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism, malicious mischief. This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protective systems.

### 3. Asbestos, Dioxin or Polychlorinated Biphenols Exclusions

This policy does not cover -

a)   Asbestos, dioxin or polychlorinated biphenols (hereinafter all referred to as "Materials") removal from any good, product or structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective system.

b)   Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials;

PR9015 (08/06)
LX1092

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 21 of 62

c)    Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

The exception to exclusion 3(a), above, does not apply to payment for the investigation or defense of any loss, damage or any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended

## 4.  Debris Removal Exclusion

The Company will pay the expense within the sum insured to remove debris of insured property damaged or destroyed by an insured peril during the policy term.

The Company will not pay the expense to:

a)  Extract contaminants or pollutants from the debris; or

b)  Extract contaminants or pollutants from land or water; or

c)  Remove, restore or replace contaminated or polluted land or water; or

d)  Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss or damage.

## 5.    Authorities Exclusion

Notwithstanding any of the provisions of this policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority arising from any cause whatsoever.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 22 of 62

PR9015 (08/06)
LX1093

## OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

It is understood and agreed that the following special terms and conditions apply to this policy:

1.  The limit of liability or Amount of Insurance shown on the face of this policy, or endorsed onto this policy, is the total limit of the Company's liability applicable to each occurrence, as hereafter defined. Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall the liability of the Company exceed this limit or amount irrespective of the number of locations involved.

    The term "occurrence" shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties, arising out of one event. When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, the insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to the covered property occurs.

2.  The premium for this policy is based upon the Statement of Values on file with the Company, or attached to this policy. In the event of loss hereunder, liability of the Company, subject to the terms of paragraph one (1) above, shall be limited to the least of the following:

    a.  The actual adjusted amount of loss, less applicable deductible(s).

    b.  The total stated value for the property involved, as shown on the latest Statement of Values on file with the Company, less applicable deductible(s).

    c.  The limit of Liability or Amount of Insurance shown on the face of this policy or endorsed onto this policy.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 23 of 62

PR9014(Ed.01/91)
LX1083

# LEXINGTON INSURANCE COMPANY
### 100 Summer Street, Boston, MA 02110-2103

## Standard Property Conditions

This endorsement effective 02/25/2014, forms a part of Policy Number 44269312 - 03

issued to UNIVERSAL SPC, INC.          d/b/a UNIVERSAL SPC, INC.          by Lexington Insurance Company

(hereinafter called "the Company").

In consideration of the premium charged, the following clauses are hereby made applicable under this policy.

### MINIMUM EARNED PREMIUM CLAUSE

In the event of cancellation of this policy by the Insured, a minimum premium of  $5,029    shall become earned, any provision of the policy to the contrary notwithstanding.

Failure of the Insured to make timely payment of premium shall be considered a request by the insured for the Company to cancel on the Insured's behalf. In the event of such cancellation for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such cancellation shall be rescinded if the insured remits and the Company receives the full policy premium with 10 days after the date of issuance of the cancellation notice. Such remittance and acceptance by the Company shall not effect the minimum earned premium provision of this endorsement. In the event of any other cancellation by the Company, the earned premium shall be computed pro-rata, not subject to the minimum earned premium.

### POLICY DEDUCTIBLE

Each claim for loss or damage separately occurring shall be adjusted separately and from each such adjusted claim, the amount of  See Policy  shall be deducted. Notwithstanding the foregoing, the deductible amount applying to certain peril(s) insured against by this policy shall be as follows:

| | |
|---|---|
| deductible applying to | **SEE POLICY** |
| deductible applying to | **SEE POLICY** |
| deductible applying to | **SEE POLICY** |
| deductible applying to | **SEE POLICY** |
| deductible applying to | **SEE POLICY** |

In the event of any other insurance covering the property insured hereunder, whether or not concurrent, the deductible(s) specified herein shall apply in full against that portion of any claim for loss or damage which the Company is called upon to pay under the provisions of the Apportionment Clause irrespective of any provisions to the contrary of such other insurance.

ELECTRONICALLY FILED
2/22/2016 4:09 PM
2016-CH-11070
PAGE 24 of 62

### CANCELLATION CLAUSE

Except and to the extent of the Minimum Earned Premium Clause which is part of this policy, this clause supersedes other cancellation clauses made a part of this policy.

CANCELLATION:  This policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured, at the mailing address shown in this policy or last known address, written notice, stating when, not less than  30  days thereafter (10 days for non-payment of premium) such cancellation shall be effective. The effectiveness of cancellation is not dependent on the return of unearned premium with the notice. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or the Company shall be equivalent to mailing. If the Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment shall be made as soon as practicable after cancellation becomes effective.

### SERVICE OF SUIT CLAUSE

Service of Suit:  In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service or process in such suit may be made upon

1 of 2

PR9019 (Ed. 01/94)
LX1101

Counsel, Legal Department, Company stated on Declarations, 100 Summer Street, Boston, Massachusetts, 02110-2103, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## WAR RISK EXCLUSION CLAUSE

The Company shall not be liable for any loss, caused directly or indirectly, by (1) hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack (a) by government or sovereign power (dejure or de facto) or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or force (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction; (4) any consequence of any of the foregoing.

## NUCLEAR EXCLUSION CLAUSE

The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination all whether controlled or not, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy. If the peril of fire is insured under this policy, then, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

## SALVAGE AND RECOVERY CLAUSE

All salvages, recoveries and payments recovered or received either prior or subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustment shall be made by the parties hereto, including deduction of the Company's cost of recovery or salvage.

## REPORTING CLAUSE

Notwithstanding that the Insured may be obligated to report full values for premium purposes, the Company's maximum limit of liability shall not exceed that amount stated as the policy limit of liability.

## PROOF OF LOSS AND PAYMENT

The Insured shall complete and sign a sworn proof of loss within ninety (90) days after the occurrence of a loss (unless such period be extended by written agreement of the Company) stating the time, place and cause of loss, the interest of the Insured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, and all other insurance thereon. All adjusted claims shall be due and payable thirty (30) days after the presentation and acceptance of satisfactory proof(s) of loss at the office of the Company at 100 Summer Street, Boston, Massachusetts 02110-2103.

## GOVERNMENT ACTIVITY CLAUSE

The Company shall not be liable for loss or damage caused by or resulting from: (1) the seizure or destruction of property insured by this policy by any government body, including any customs or quarantine action, or (2) confiscation or destruction of any property by order of any government or public authority, except an order to destroy property to prevent the spread of fire or explosion.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of its duly authorized representatives.

2 of 2

PR9019 (Ed. 01/94)
LX1101

## SCHEDULE OF LIMITS, SUBLIMITS AND DEDUCTIBLES

**Policy Number: 44269312 - 03**

Issued to: UNIVERSAL SPC, INC.
D/B/A: UNIVERSAL SPC, INC.

### LIMITS OF LIABILITY

The Company insures up to and shall not be liable for more than $6,710,000 per occurrence.

### SUBLIMITS OF LIABILITY

| | | |
|---|---|---|
| A. | $ 5,207,500 | Per Occurrence for all Real & Personal Property, |
| B. | $ 1,502,500 | Per Occurrence for all Business Interruption, |
| C. | $ Included | Per Occurrence for all Extra Expense, |
| D. | $ Included | Per Occurrence for all Rental Value, |
| E. | $ 100,000 | Per Occurrence for Demolition and Increased Cost of Construction, |
| F. | $ 25,000 | Per Occurrence for all Valuable Papers, |
| G. | (1) $ 50,000 | Per Vehicle, for all Property in Transit, |
| | (2) $ 50,000 | Per Occurrence, for all Property in Transit, |
| | (1) $ Included | Per Occurrence, for all Electronic Data Processing Equipment, |
| | (2) $ Included | Per Occurrence, for all Electronic Data Processing Media, |
| | (3) $ Included | Per Occurrence, for all Electronic Data Processing Extra Expense, |
| | $ 500,000 | For Newly Acquired Property for a period of 60 days, if not reported to the Company in that 60 day period coverage ceases, |
| J. | $ Not Covered | In the aggregate for any one policy year for the peril of Flood, |
| K. | $ Not Covered | In the aggregate for any one policy year for the peril of Earthquake, |
| L. | $ Not Covered | Errors and Omissions, |
| M. | $ 25,000 | Offsite Storage Locations, |
| N. | $ 10,000 | Personal Property of the Insured's officers and employees while on the premises of the Insured. |

O. OTHER SUBLIMITS (define and list below):

$

Sublimits of Liability, stated above are within, and do not increase, the Limits of Liability stated above.

PR9540 ( 09/02 )

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 26 of 62

DEDUCTIBLES:

The following deductibles, referenced as "see schedule" in the Manuscript All Risk Form, Section 4. DEDUCTIBLES, shall read as follows:

A. All loss, damage, and/or expense arising out of any one occurrence shall be adjusted as one loss, and from the amount of each such adjusted loss shall be deducted the sum of $ 5,000 except;

B. Earthquake: The sum of $ **Not Covered** shall be deducted from any adjusted loss due to Earthquake except in the State of California where Not Covered of the total values at the time of loss at each location involved in the loss subject to a minimum of Not Covered for any one occurrence shall be deducted from any adjusted Earthquake loss;

D. Windstorm and Hail: The following sum(s) shall be deducted from any adjusted loss due to Windstorm and Hail;

   (2) With respect to all other locations, all loss, damage, and/or expense arising out of any one occurrence shall be adjusted as one loss, and from the amount of each such adjusted loss shall be deducted .

All other deductibles as shown in the Manuscript All Risk Form, Section 4.     DEDUCTIBLES, remain the same unless otherwise indicated below.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 27 of 62

PR9540 ( 09/02 )                                    2

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MOLD / FUNGUS EXCLUSION**

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows.

The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or resulting from fungus, mold(s), mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;

> (a) fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

> (b) mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

> (c) spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

regardless of any other cause or event that contributes concurrently or in any sequence to such loss.

All other terms, conditions, definitions, exclusions, limitations and provisions of the Policy remain the same.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 28 of 62

AUTHORIZED REPRESENTATIVE
OR Countersignature (In states where applicable)

LX9512 (08/02)

## ENDORSEMENT

**This endorsement, effective 12:01 AM**    02/25/2014

**Forms a part of policy no.:**    44269312 - 03

**Issued to:**    UNIVERSAL SPC, INC.
**D/B/A:**    UNIVERSAL SPC, INC.

**By:**    Lexington Insurance Company

## PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:
COMMERCIAL PROPERTY COVERAGE PART

## SCHEDULE

**Description:**
This endorsement applies to any location(s) covered under this policy which has an automatic sprinkler system.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 29 of 32

**Describe any "P-9":**
Automatic sprinkler system(s) and related supervisory services must be operational at all times. Automatic fire protection or extinguishing systems must be in place and remain operational at all times.

This insurance will be automatically suspended at the involved location if you fail to notify us immediately when you:

1.  Know of any suspension or impairment in the protective safeguards; or

2.  Fail to maintain the protective safeguards over which you have control in complete working order.

    If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

B.  The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1" Automatic Sprinkler System,** including related supervisory services.

Automatic Sprinkler System means:

a.  Any automatic fire protective or extinguishing system, including connected:

    1)  Sprinklers and discharge nozzles;

    2)  Ducts, pipes, valves and fittings;

    3)  Tanks, their component parts and supports; and

    4)  Pumps and private fire protection mains.

b.  When supplied from an automatic fire protective system:

1) Non-automatic fire protective systems; and

2) Hydrants, standpipes and outlets.

C. Reporting to a public or private fire alarm station.

**"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

a. Connected to a central station; or

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-9"** The protective system described in the Schedule.

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 30 of 62

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

IL0415(Ed.01/87)
LX1136

2 of 2
Copyright, ISO Commercial Risk Services, Inc.

## ENDORSEMENT

## PROPERTY ENDORSEMENT

It is noted and agreed that this policy is hereby amended as follows:

The Insurer will not pay for Damage or Consequential loss directly or indirectly caused by, consisting of, or arising from:

1. Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

2. Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

3. Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing liability or failure of the Insured to conduct business.

This Endorsement shall not exclude subsequent damage or Consequential loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean: Fire, Lightning, Earthquake, Explosion, Falling Aircraft, Flood, Smoke, Vehicle Impact, Windstorm or Tempest.

Such Damage or Consequential loss described in 1, 2, or 3 above is excluded regardless of any other cause that contributed concurrently or in any other sequence.

All other terms, conditions and exclusions of this policy remain unchanged.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 31 of 62

Authorized Representative OR
Countersignature (In states where applicable)

PR9514 (09/02)

**ENDORSEMENT**

**This endorsement, effective 12:01 AM 02/25/2014**

**Forms a part of policy no.: 44269312 - 03**

**Issued to: UNIVERSAL SPC, INC.**

**D/B/A: UNIVERSAL SPC, INC.**

**By: Lexington Insurance Company**

**COMBINED PROPERTY/BOILER & MACHINERY MILLENNIUM ENDORSEMENT**

This policy is hereby amended as follows:

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 32 of 62

A. The Insurer will not pay for Damage or Consequential Loss directly or indirectly caused by, consisting of, or arising from, the failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

1. correctly recognize any date as its true calendar date;

2. capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date other than its true calendar date; and/or

3. capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

B. It is further understood that the Insurer will not pay for the repair or modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

C. It is further understood that the Insurer will not pay for Damage or Consequential Loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in A. above.

Such Damage or Consequential Loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This endorsement shall not exclude subsequent Damage or Consequential Loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean fire, lightning, explosion, aircraft or vehicle impact, falling objects, windstorm, hail, tornado, hurricane, cyclone, riot, strike, civil commotion, vandalism, malicious mischief, earthquake, volcano, tsunami, freeze or weight of snow, sudden and accidental breakdown of an object, including mechanical and electrical breakdown.

All other terms, conditions and exclusions of this policy remain unchanged.



AUTHORIZED REPRESENTATIVE

69813 (2/98)

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $ 199, and does not include any charges for the portion of losses covered by the United States government under the Act.

96556 (1/08)
© 2007 National Association of Insurance Commissioners

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 33 of 62

**LEXINGTON INSURANCE COMPANY**
Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110-2103

## MANUSCRIPT ALL RISK FORM

The Company does insure, subject to the terms, conditions, definitions,
exclusions, limitations and provisions contained herein the Named Insured,
as stated in ITEM 1 of the Declarations, hereinafter referred to as the Insured.

### 1. TERMS OF INSURANCE

In consideration of the premium charged, the policy attaches and covers losses occurring during the Policy Period, as stated in ITEM 2 of the Declarations, at the location of property insured, as stated in the Schedule and/or Declarations attached to and forming a part of this policy.

### 2. LIMITS OF LIABILITY

The Company insures up to and shall not be liable for more than the Limit of Liability as stated in the Schedule of Limits, Sublimits and Deductibles attached to and forming a part of this Policy.

### 3. SUBLIMITS OF LIABILITY

As stated in the Schedule of Limits, Sublimits and Deductibles attached to and forming a part of this Policy.

Sublimits of Liability, stated in the Schedule of Limits, Sublimits and Deductibles attached to and forming a part of this Policy, are within, and do not increase, the Limits of Liability stated in Section 2. Limits of Liability.

### 4. DEDUCTIBLES

A. All loss, damage, and/or expense arising out of any one occurrence shall be adjusted as one loss, and from the amount of each such adjusted loss shall be deducted the sum shown in the Schedule of Limits, Sublimits and Deductibles attached to and forming a part of this Policy;

B. Earthquake: The sum(s) shown in the Schedule of Limits, Sublimits and Deductibles attached to and forming a part of this Policy shall be deducted from any adjusted loss due to Earthquake;

C. Flood: The following sum(s) shall be deducted from any adjusted loss due to Flood;

    (1) With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding, as defined by the Federal Emergency Management Agency (if these locations are not excluded elsewhere in this policy with respect to the peril of flood), the deductible shall be 5% of the total values at the time of loss at each location involved in the loss, subject to a minimum of $1,000,000 for any one occurrence;

    (2) With respect to Named Storms (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm), the deductible shall be 5% of the total values at the time of loss at each location involved in the loss, subject to a minimum of $100,000 for any one occurrence;

    (3) With respect to any other flood loss, the deductible shall be 5% of the total values at the time of loss at each location involved in the loss, subject to a minimum $25,000 any one occurrence and a maximum $100,000 any one occurrence.

D. Windstorm and Hail: The following sum(s) shall be deducted from any adjusted loss due to Windstorm and Hail;

    (1) With respect to locations within Tier I wind zones the deductible shall be 5% of the total values at the time of loss at each location involved in the loss, subject to a minimum of $250,000 for any one occurrence (or as otherwise provided by endorsement hereto);

ELECTRONICALLY FILED
8/22/2016 4:08 PM
2016-CH-11170
CALENDAR: 62

1

MAN
PR9545 (08/06)

(2) With respect to all other locations, all loss, damage, and/or expense arising out of any one occurrence shall be adjusted as one loss, and from the amount of each such adjusted loss shall be deducted the sum shown in the Schedule of Limits, Sublimits and Deductibles attached to and forming a part of this Policy;

(3) All reference herein to "Tier I", "Tier I Windstorm" or similar "Tier I" references, shall be defined as all locations situated within *Tier I States or Counties* as specified below:

| | |
|---|---|
| Alabama: | Baldwin, Mobile; |
| Florida: | Entire State of Florida; |
| Georgia: | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh; |
| Hawaii | Entire State of Hawaii |
| Louisiana: | Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St. Mary, St. Bernard, St. Tammany, Terrebonne, Vermilion; |
| Mississippi: | Hancock, Harrison, Jackson; |
| North Carolina: | Beaufort, Brunswick, Carteret, Craven, Dare, Hyde, New Hanover, Onslow, Pamlico, Pender; |
| South Carolina: | Beaufort, Berkley, Charleston, Colleton, Georgetown, Horry, Jasper; |
| Texas: | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Willacy; |
| Virginia | Accomack, Northampton, Virginia Beach City, Chesapeake, Gloucester, Hampton City, Lancaster, Mathews, Middlesex, Newport News, Norfolk City, Northumberland, Poquoson City, Porsmouth City, Suffolk City, York |

All other states: As provided by endorsement hereto (if any).

E. In the event of a single occurrence involving more than one location, only one deductible amount shall apply against the entire loss;

F. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable;

## LOSS PAYEE

if any, shall be adjusted with and payable to the Named Insured or their order, unless endorsed otherwise. Receipt of payment by the Insured or Loss Payee as provided under this policy shall constitute a release in full of all liability under this policy with respect to such loss. In the event that the Company makes a partial payment or payments of loss, release in full of all liability shall occur upon final payment with respect to such loss.

ELECTRONICALLY FILED
8/22/2016 8:09 PM
2016-CH-11070
CALENDAR: 35
PAGE 33 of 62

### 6. TERRITORY

This policy covers property located within the 50 states comprising the United States of America, the District of Columbia and Canada.

### 7. COVERAGE

Except as hereinafter excluded, this policy covers:

#### A. REAL AND/OR PERSONAL PROPERTY

(1) The interest of the Insured in all Real and/or Personal Property, including improvements and betterments and alterations owned or used by the Insured, as stated in the Schedule and/or Declarations attached to and forming a part of this policy, or hereinafter constructed, erected, installed, or acquired.

2

MAN
PR9545 (08/06)

In the event of loss or damage, the Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, unless otherwise stated by contract or lease agreement.

(2) The interest of the Insured in Real and Personal Property of others in the Insured's care, custody, or control.

(3) Personal Property of the Insured's officers and employees while on premises of the Insured, for which values have been declared and for which a sublimit is indicated in Section 3. Sublimits of Liability, Paragraph N.

(4) Contractors' interest in property covered to the extent of the Insured's liability imposed by law or assumed by contract.

### B. BUSINESS INTERRUPTION

Business Interruption means loss resulting from necessary interruption of business conducted by the Insured and caused by direct physical loss or damage by any of the perils covered herein during the term of this policy to Real and/or Personal Property as covered herein.

If such loss occurs during the term of this policy, it shall be adjusted on the basis of the actual loss sustained by the Insured, during the period of restoration, consisting of the net profit (or loss) which is thereby prevented from being earned and of all charges and expenses, but only to the extent that they must necessarily continue during the interruption of business, and only to the extent to which they would have been incurred had no loss occurred.

Ordinary payroll is defined to be the entire payroll expenses for all employees of the Insured except officers, Executives and department managers.

The Company shall not be liable for any loss resulting from the time required to reproduce finished stock. Finished stock shall mean stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment, or sale.

(1) **RESUMPTION OF OPERATIONS:** It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business,

(a) by a complete or partial resumption of operations, or

(b) by making use of other available stock, merchandise or location such reduction will be taken into account in arriving at the amount of loss hereunder, but only to the extent that the Business Interruption loss covered under this policy is thereby reduced.

(2) **EXPENSE TO REDUCE LOSS:** This policy also covers such expenses as are necessarily incurred for the purpose of reducing any Business Interruption loss under this policy, provided such coverage shall not exceed the amount by which the Business Interruption loss covered under this policy is thereby reduced.

(3) **EXPERIENCE OF BUSINESS:** In determining the amount of net profit (or loss), charges and expenses covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the Insured's business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.

### C. EXTRA EXPENSE

Extra Expense meaning the excess cost necessarily incurred to continue the operation of the Insured's business or facility that would not have been incurred had there been no loss or damage by any of the perils covered herein during the term of this policy to Real and/or Personal Property as covered herein.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 36 of 62

3

MAN
PR9545 (08/06)

**D. RENTAL VALUE**

Rental Value meaning loss sustained by the Insured resulting directly from the necessary untenantability, during the period of restoration, caused by loss, damage or destruction by any of the perils covered herein during the term of this policy to Real and/or Personal Property as described in the previous paragraphs, but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenantability.

For the purpose of this insurance "Rental Value" is defined as the sum of:

(a) the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured, and

(b) the amount of all continuing charges which are the legal obligation of the tenant(s) and which, because of the loss, become obligations of the Insured, and

(c) the fair rental value of any portion of said property which is occupied by the Insured.

    (1) **EXPENSE TO REDUCE LOSS:** This policy also covers such expenses as are necessarily incurred for the purpose of reducing any Rental Value loss covered under this policy. Such coverage, however, shall not exceed the amount by which the loss under this policy is thereby reduced.

    (2) **EXPERIENCE OF THE BUSINESS:** In determining the amount of Rental Value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.

**ADDITIONAL PROVISIONS APPLICABLE TO BUSINESS INTERRUPTION, EXTRA EXPENSE AND RENTAL VALUE COVERAGE**

**(1) PERIOD OF RESTORATION:**

Period of restoration means the period of time that:

(a) Begins with the date of direct physical loss or damage by any of the perils covered herein, at the described premises; and

(b) Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

Period of restoration does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down, of any property; or

(b) Requires the Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "contaminants" or "pollutants" as defined in Section 9. Perils Excluded, Paragraph Q.

The expiration date of this policy will not cut short the period of restoration.

**(2) SPECIAL EXCLUSIONS:** This policy does not insure against any increase of loss which may be occasioned by the suspension, lapse, or cancellation of any lease, license, contract, or order, nor for any increase of loss due to delays in rebuilding, repairing, or replacing the property damaged or destroyed or with the resumption or continuation of business, or with the reoccupancy of the premises caused by

4

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 37 of 62

MAN
PR9545 (08/06)

interference at the Insured's premises by strikes or other persons nor for any increase of loss which may be occasioned by loss or damage to property in transit away from the Insured's premises.

(3) **EXTENSION OF COVERAGE:** This policy, subject to all of its provisions and without increasing the Limit of Liability as stated in Section 2. Limits of Liability, and Section 3. Sublimits of Liability, also provides coverage for interruption of business conducted by the Insured resulting from loss or damage, by the perils insured against, during the term of this policy, to:

   (a) public utility plants, transformers or switching stations, substations furnishing heat, light, power, water, telephone or gas to the Insured's premises;

   (b) any property thereby preventing ingress to or egress from the Insured's premises, for a period not exceeding two (2) weeks;

   (c) any property when access to the premises is prohibited by order of civil or military authority, for a period not exceeding two (2) weeks.

## F. VALUABLE PAPERS AND RECORDS

Valuable papers and records, shall mean written, printed or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro inscribed documents, manuscripts and media, but not including Electronic Data Processing Data or Electronic Data Processing Programs, or money and/or securities.

The term securities shall mean all negotiable and non-negotiable instruments or contracts representing either money or other property and includes revenue and other stamps in current use, tokens and tickets, but does not include money.

## ELECTRONIC DATA PROCESSING EQUIPMENT, MEDIA, DATA AND PROGRAMS

(1) Electronic Data Processing Equipment shall mean electronic data processing systems including keyboards, display screens, terminals, printers and related peripheral equipment;

(2) Electronic Data Processing Media shall mean magnetic tapes, compact discs, diskettes, disk packs, cards or other standardized data recording materials which can be read by electronic data processing equipment;

(3) Electronic Data Processing Data shall mean information, instructions or programs that are recorded on your media, including original source material used to enter data;

(4) Electronic Data Processing Programs shall mean software that are purchased or written specifically to be used with electronic data processing equipment.

## H. PROPERTY IN TRANSIT

Property in transit shall mean shipments within and between the territorial limits of this policy including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter, while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or inbound shipment; including during unavoidable deviation and delay; until safely delivered into the place of final destination.

This insurance is extended to cover loss or damage to property;

(1) sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

(2) occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

5

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11870
PAGE 38 of 62

The Insured may waive right(s) of recovery against private and contract carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting their liability, but this Transit insurance shall not inure to the benefit of any carrier, bailee, warehousemen, or processor;

With respect to shipments made under F.O.B. point of origin or similar terms, this Company agrees to waive its rights of subrogation against consignees at the option of the Insured.

The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

Seaworthiness of any vessel or craft is admitted between the Company and the Insured.

## I. DEMOLITION AND INCREASED COST OF CONSTRUCTION

In the event of loss or damage under this policy, by any of the perils covered herein, during the term of this policy, to Real Property covered herein, that causes the enforcement of any law or ordinance regulating the construction or repair of the damaged facilities, subject to the sublimit specified in Section 3. Sublimits of Liability, Paragraph E., this policy provides coverage for:

A.   the cost of demolishing the undamaged facility including the cost of clearing the site;

B.   the value of such undamaged part of the facility which must be demolished;

C.   the increased cost of repair or reconstruction of the damaged facility on same or another site limited to the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property and the cost thereof on the same site. However, the Company shall not be liable for any increased cost of construction loss unless the damaged facility is actually rebuilt or replaced within two years;

any increase in the business interruption, extra expense or rental value loss arising out of the additional time required to comply with such law or ordinance. This increase will be based upon the difference between the additional time required to comply with the law or ordinance and the time it would have taken to replace the property with materials of like kind and quality, absent such law or ordinance.

## NEWLY ACQUIRED PROPERTY

This policy is automatically extended to cover additional property as described in this policy which may be purchased, leased or acquired during the policy period, subject to the sublimit shown in the Section 3. Sublimits of Liability, Paragraph I.

The value of such additional property or properties upon which liability is hereby assumed by this Company shall be reported to this Company within sixty (60) days from the date on which the Insured acquires an insurable interest in such property or properties failing which, this Company shall be relieved of all liability as assumed hereunder on such property or properties, from date of acquisition until such time as values are reported to, and received by, this Company.

The premium for any newly acquired property declared under this policy shall be due and payable at the time reported and shall be calculated pro rata of the rate applying at such property or properties, from the date on which the insured acquires an insurable interest in such property or properties to the expiration of this policy.

## K. FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES

In the event of loss or damage to covered property by a peril Insured against, this policy shall cover:

A.   fire brigade and other extinguishing expenses for which the Insured may be assessed;

ELECTRONICALLY FILED
8/22/2016 4:59 PM
2016-CH-11070
PAGE 39 of 62

6

MAN
PR9545 (08/06)

B.    the cost of fire extinguishing materials expended.

## 8.  PROPERTY EXCLUDED

This policy does not cover the following:

A.    Money; coins, currency, bullion, notes, securities, stamps, food stamps, letters of credit, telephone cards, tickets, accounts, bills, deeds, evidence of debt;

B.    Land; land values; soil; water, including ground water, surface water, process water and drinking water; growing crops; drying crops; standing timber; lawns; trees; plants; shrubs and animals except animals held for research and then only for the perils of fire, wind, hail, aircraft, riot or civil commotion, vehicle, explosion and smoke;

C.    Cost of excavations, filling, back filling and grading;

D.    Underground pipes, flues and drains;

E.    Wells; brick, stone or concrete foundations or footings of any kind; pilings below the surface of the ground; piers, wharves or docks; pavements, sidewalks or roadways; retaining walls that are not part of a covered building;

F.    Watercraft; aircraft; any type of motor vehicles licensed for highway use, when not on the Insured's premises; railroad rolling stock;

G.    Waterborne shipments to and from Hawaii or Alaska;

H.    Export shipments after loading on board an overseas vessel or after ocean marine insurance attaches, whichever occurs first; and import shipments until they have been discharged from the overseas vessel or until the ocean marine insurance terminates, whichever occurs last;

I.    Furs, fur garments and garment containing fur, jewels, jewelry, watches, pearls, precious and semi-precious stones, bullion, gold, silver, platinum, other precious metals and alloys;

J.    Property sold on installment, conditional sale, trust agreement or other deferred payment plan, after delivery to customers, whether or not the insured retains title to such property;

K.    Shipments by mail and/or parcel post;

L.    Power transmission and feeder lines not on the Insureds premises;

M.    Contraband or property in the course of illegal transportation or trade.

## 9.  PERILS INSURED AGAINST

This policy insures against all risks of direct physical loss of or damage to property described herein including general average, salvage and all other similar charges on shipments covered hereunder, if any, except as hereinafter excluded.

## 10.  PERILS EXCLUDED

This policy does not insure against loss or damage caused directly or indirectly by any of the following excluded perils. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

A.    any loss or damage resulting from, or arising out of, fraudulent or dishonest or criminal act or acts committed by the Insured or any of the Insured's employees or others to whom the property may be delivered or entrusted;

B.    inventory shortage or unexplained disappearance;

7

MAN
PR9545 (08/06)

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 46 of 62

C. the cost of making good defective design or specifications, faulty materials or faulty workmanship. But, if loss or damage from a covered peril herein results, to covered property, from such defective design or specifications, faulty material or faulty workmanship, then this policy will cover such ensuing loss or damage not otherwise excepted or excluded from coverage;

D. electrical injury or disturbance to electrical appliances, devices, or wiring caused by electrical currents artificially generated. But if loss or damage from a covered peril results, to covered property, from such electrical injury or disturbance, then this policy shall cover such ensuing loss or damage not otherwise excepted or excluded from coverage; This exclusion shall not apply to Electronic Data Processing Systems and Valuable Papers.

E. mechanical breakdown. But if loss or damage from a covered peril results from such mechanical breakdown then this policy shall cover such ensuing loss or damage not otherwise excepted or excluded from coverage; This exclusion shall not apply to Electronic Data Processing Systems and Valuable Papers.

F. explosion, rupture, or bursting of steam boilers, steam pipes, steam turbines or steam engines owned or operated by the Insured. But if loss or damage from a covered peril results, to covered property, from such explosion, rupture, or bursting then this policy shall cover such ensuing loss or damage not otherwise excepted or excluded from coverage;

G. loss or damage caused by, arising out of, contributed to, or resulting from:

   (1) moth, vermin, termites or other insects;

   (2) inherent vice, latent defect, rust, wet or dry rot;

   (3) dampness of atmosphere, smog or extremes in temperature, marring, scratching, change in color or finish, contamination by pollutants or any other foreign matter;

H. errors in processing or manufacturing of the Insured's products. But if loss or damage from a covered peril results, to covered property, from such errors in processing or manufacturing then this policy shall cover such ensuing loss or damage not otherwise excepted or excluded from coverage;

I. ordinary wear, tear, or gradual deterioration. But if loss or damage from a covered peril results, to covered property, from such wear, tear and gradual deterioration then this policy shall cover such ensuing loss or damage not otherwise excepted or excluded from coverage;

J. normal settling, shrinkage or expansion of buildings, foundations or walls, floors, or ceilings. But if loss or damage from a covered peril results, to covered property, from such settling, shrinkage or expansion then this policy shall cover such ensuing loss or damage not otherwise excepted or excluded from coverage;

K. loss of market;

L. delay with respects to property in transit;

M. against nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except

   (1) if fires ensues, liability is specifically assumed for direct loss by such ensuring fire but not including any loss due to nuclear reaction, nuclear radiation or radioactive contamination;

   (2) the Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage from material used or stored or from processes conducted on an insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 41 of 62

8

MAN
PR9545 (08/06)

N. (1) war, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating, or defending against an actual, impending, or expected attack

> (a) by any government or sovereign power (de jure or de factor) or by any authority maintaining or using military, naval, or air forces; or
>
> (b) by military, naval, or air forces; or
>
> (c) by an agent of any such government, power, authority, or force;
>
> (d) any weapon of war employing atomic fission or radioactive force, whether in time of peace or war, whether or not its discharge was accidental;

(3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering combating, or defending against such occurrence, seizure or destruction;

(4) any consequence of any of the foregoing.

O. loss or damage to any aircraft, watercraft or motor vehicles licensed for highway use when not on the insured's premises;

P. loss or damage caused by or resulting from:

(1) Earthquake and/or Volcanic Eruption, unless specified in Section 3. Sublimits of Liability, Paragraph K., and then only for such specified amount;

(2) Flood, unless specified in Section 3. Sublimits of Liability, Paragraph J., and then only for such specified amount;

(3) any and all loss from any other cause when occurring concurrently or sequentially with Earthquake, Volcanic Eruption or Flood except Fire; and the limit of insurance hereunder for such Fire shall be the amount of insurance covering the property or the residual value of the property if the Fire is preceded by Earthquake or Volcanic Eruption damage or Flood, whichever is the lesser amount.

## 11. VALUATION

At the time of loss, the value of covered property, unless otherwise endorsed herein, shall be as follows:

A. Real and/or Personal Property at replacement cost without deduction for depreciation except as provided below or by endorsement.

(1) The Company's liability for loss on a replacement cost basis shall not exceed the smallest of the following amounts:

(a) The limit of this policy applicable to the damaged or destroyed property;

(b) The replacement cost of the property or any part thereof identical with such property on the same premises and intended for the same occupancy and use; or

(c) The amount actually and necessarily expended in repairing or replacing said property or any part thereof.

(2) The Company shall not be liable under this clause for any loss, occasioned directly or indirectly by the enforcement of any ordinance or law regulating the use, construction, repair or demolition of property unless such liability has been specifically assumed under this policy;

(3) If the property is not repaired or replaced within a reasonable period from the date of loss, the valuation is to be on an Actual Cash Value basis measured at the time of loss. Actual Cash Value shall mean the

9

MAN
PR9545 (08/06)

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 42 of 62

lesser of (i) replacement cost less depreciation or (ii) market value.

B. Contractors Equipment at not more than the Actual Cash Value of the property at the time of loss or damage with proper deduction for depreciation.

C. Property of others at the amount for which the Insured is liable but in no event to exceed replacement cost plus the cost of labor performed and materials expended thereon at the time of loss.

D. Tenant's Improvement and Betterments:

(1) If repaired or replaced at the expense of the Insured within a reasonable period from the time of loss, the replacement cost of the damaged or destroyed improvements and betterments.

(2) If not repaired or replaced within a reasonable period from the time of loss, the proportion of the original cost at the time of installation of the damaged or destroyed property which the unexpired term of the lease or rental agreement, whether written or oral, in effect at time of loss bears to the period from the date such improvements or betterments were made to the expiration date of the lease.

(3) If repaired or replaced at the expense of others, there shall be no liability hereunder.

E. Mercantile Stock: stock actually sold but not delivered at the price at which it was sold, less all discounts and unincurred expenses.

F. Manufacturer's Finished Stock: finished stock manufactured by the Insured at the price, less all discounts and unincurred expenses, for which the stock has been or would have been sold had no loss occurred.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 43 of 62

G. Valuable papers and records and media: The cost to repair or replace the property with other property of like kind and quality including the cost of gathering and/or assembling information, but only if such property is actually repaired or replaced.

H. Patterns and dies: Replacement cost if actually replaced within twelve months following the date of loss otherwise at scrap value.

I. Electronic Data Processing Equipment: The actual cost to repair or replace the lost or damaged property with new property of the same kind, quality and capability, on the same site and used for the same purpose.

J. Electronic Data Processing Media: The actual cost to repair or replace the property with other property of like kind and quality.

K. Electronic Data Processing Data and Programs: The actual cost to reproduce the data and programs, up to the limit of coverage, if you actually reproduce the data and programs. Such costs shall include any additional reasonable expense incurred in reproducing the data and programs, to continue normal computer operations.

There shall be no liability hereunder for data and programs that cannot be reproduced due to lack of backup, support documentation or records unless such articles are described and specific limits shown in this policy.

L. Fine Arts: The appraised value; or, if there is no appraisal at the greater of:

(1) the original acquisition cost, or

(2) the market value at the time of loss.

M. All property not otherwise described: The Actual Cash Value of the property at the time the loss or damage occurs being replacement cost less depreciation.

## 12. FLOOD

With respect to the peril Flood, any and all losses from this cause within a 72-hour period shall be deemed to be one loss insofar as the Limit of Liability and Deductible provisions of this policy are concerned.

The Company shall not be liable for any loss caused by any Flood which commences before the effective date and time of this policy, however, the Company will be liable for any loss occurring for a period of up to seventy-two (72) hours after the expiration of this policy provided that the first flood damage occurs prior to the date and time of the expiration of this policy.

The term "flood", as used herein, shall mean surface water, waves, tide, or tidal water and the rising (including overflowing or breaking of boundaries) of lakes, ponds, reservoirs, rivers, streams, harbors and similar bodies of water. The term "surface water", as insured hereunder, shall mean seepage, leakage or influx of water (immediately derived from natural sources) through sidewalks, driveways, foundations, walls, basements or other floors, or through doors, windows or any other openings in such sidewalks, foundations, walls or floors; and shall also include all water which backs up through sewers and drains.

## 13. EARTHQUAKE

Each loss by Earthquake shall constitute a single claim hereunder; provided, if more than one earthquake shock shall occur within any period of seventy-two (72) hours during the term of this policy such Earthquake shall be deemed to be a single Earthquake within the meaning hereof. The Company shall not be liable for any loss caused by any Earthquake occurring before the effective date and time of this policy, however, the Company will be liable for any losses occurring for a period of up to seventy-two (72) hours after the expiration of this policy provided that the first earthquake shock or damage occurs prior to the date and time of the expiration of this policy.

The terms "earthquake", as used herein shall mean; earth shock, volcanic action, landslide, mudslide, earth movement, earth sinking, earth rising or shifting.

## 14. CONTRIBUTING INSURANCE

Contributing insurance is insurance covering in the same manner and layer as this insurance which is not designated as and certified to the Company as primary or excess with respect to the insurance provided in this policy. This insurance shall contribute in accordance with the conditions of this policy, only to the extent of proportion that the applicable limit under this policy bears to the total limits of all policies covering in the same manner and layer as this insurance.

## 15. EXCESS INSURANCE

Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

## 16. OTHER INSURANCE

Except for insurance described in the Contributing Insurance Clause, or the Excess Insurance Clause, this policy shall not cover to the extent of any other insurance, whether prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils and whether collectible or not. This Company shall be liable for loss or damage only to the extent of that amount excess of such other insurance.

## 17. SUBROGATION

A.  In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery. If any amount is recovered as a result of such proceedings the costs of

11

MAN
PR9545 (08/06)

recovery shall be divided between the interests concerned in the proportion of their respective interests. Priority of recovery shall be, up to the amount(s) of their loss payment(s):

- (i) excess insurer(s);
- (ii) primary insurer(s);
- (iii) the Insured;

until the amount of recovery, less expenses, is exhausted. If there should be no recovery, the expenses of proceedings shall be borne proportionately by the interests instituting the proceedings.

B. The Insured shall not do anything after a loss to jeopardize the Company's rights of subrogation. Any release from liability entered into by the Insured in writing prior to loss hereunder shall not affect this policy for the right of the Insured to recover hereunder. The right of subrogation against the Insured or subsidiary or affiliated companies or any other companies associated with the Insured through ownership or management is waived.

### 18. SALVAGE AND RECOVERIES

All salvages, recoveries and payments excluding proceeds from subrogation recovered or received subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to the said settlement and shall accrue entirely to the Company until the sum paid by the Company has been recovered.

### 19. BRANDS OR TRADEMARKS

In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal in the customary manner, at the expense of the Insurer, of all such brands or trademarks or other identifying characteristics.

### 20. CONTROL OF SALVAGE

The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods. The Insured, exercising a reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption and no goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods.

### 21. MACHINERY

In case of loss or damage by a peril insured against to any part of a machine or unit held either for sale or use consisting of two or more parts when complete, the liability of the Company shall be limited to the value of the part or parts lost or damaged or, at the Insured's option, to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit provided that such option shall not exceed the lowest of the above.

### 22. PAIR AND SET

Except as provided under the Machinery clause, in the event of loss or damage by a peril insured against to any article or articles which are a part of a pair or set, the measure of loss or damage to such article or articles shall be a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set.

### 23. NOTICE OF LOSS

The Insured shall, as soon as practicable, report to this Company or its agent every loss, damage or occurrence that may give rise to a claim under this policy.

12

MAN
PR9545 (08/06)

## 24. PROOF OF LOSS

In the event of loss or damage hereunder it is a condition precedent to the Insured's right of recovery that the Insured, within 90 days following demand therefor by the Company, render a signed and sworn proof of loss to the Company or its appointed representative stating: the place, time, and cause of the loss, damage, or expense; the interest of the Insured and all others in the damaged or destroyed property; the value of the property involved in the loss; and the amount of loss, damage, or expense.

## 25. PAYMENT OF LOSS

All adjusted claims shall be due and payable thirty (30) days after presentation and acceptance of satisfactory proof(s) of loss by this Company or its appointed representative.

## 26. PARTIAL PAYMENT OF LOSS

It is understood that the Company may make partial payments of claims subject to the policy provisions and the normal policy adjustment provisions. The Insured shall submit a partial Proof of Loss with all supporting documentation, at the request of the Company, to obtain such partial payment of claim.

## 27. AUTOMATIC REINSTATEMENT OF LIMITS

With the exception of loss caused by perils which are subject to annual aggregate limits as noted in the Limits of Liability clause, any loss hereunder shall not reduce the amount of this policy.

## 28. SUIT AGAINST THE COMPANY

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twenty-four months next after inception of the loss.

## 29. APPRAISAL

If the Insured and the Company fail to agree on the amount of loss, each upon written demand either of the Insured or of the Company made within sixty (60) days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for fifteen (15) days to agree upon such umpire, then upon the request of the Insured or of the Company such an umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then at a reasonable time and place, the appraisers shall appraise the loss stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expense of the appraisal and of the umpire. For the purposes of this provision, values as stated above shall mean that value used by the Insured in making annual reports under this insurance.

## 30. ASSISTANCE AND COOPERATION OF THE INSURED

The Insured shall cooperate with the Company, and, upon the Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

## 31. SUE AND LABOR

In case of actual (or imminent, with prior notice to and approval from this Company) loss or damage by a peril Insured against, it shall, without prejudice to the insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property, or any part of the property, insured hereunder without prejudice to this insurance; nor, in the event of loss or damage, shall the

13

MAN
PR9545 (08/06)

acts of the Insured or of the Company in recovery, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the Insured and the Company in accordance with the policy conditions in regard to losses including deductible application.

## 32. CANCELLATION

A. This policy may be cancelled at any time at the request of the Insured or it may be canceled by the Company by mailing to the Insured at the address shown in the Declaration hereof written notice stating not less than thirty (30) days thereafter such cancellation shall be effective; ten (10) days if for nonpayment of premium.

B. The mailing of such notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

C. Cancellation shall not affect coverage on any shipment in transit, if any, on the date of cancellation. Coverage will continue in force until such property is delivered and accepted.

## 33. PROTECTION MAINTENANCE

It is agreed that any protection provided for the safety of the insured property shall be maintained in good order throughout the currency of this policy and shall be in use at all times out of business hours or when the Insured's premises are left unattended, and that such protection shall not be withdrawn or varied to the detriment of the interests of the Company without their consent.

## 34. INSPECTION AND AUDIT

The Company shall be permitted but not obligated to inspect the Insured's property at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe.

The Company may examine and audit the Insured's books and records at any time during the Policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

## 35. ABANDONMENT

There shall be no abandonment to the Company of any property.

## 36. VACANCY AND/OR UNOCCUPANCY

Unless otherwise endorsed hereto, this Company shall not be liable for loss or damage to any property that has remained vacant or unoccupied for a period of sixty (60) or more days.

## 37. FALSE OR FRAUDULENT CLAIMS

If the Insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void, and all claims hereunder shall be forfeited.

## 38. ASSIGNMENT

Assignment or transfer of this Policy shall not be valid except with the written consent of the Underwriters.

14

MAN
PR9545 (08/06)

## 39. MORTGAGE CLAUSE

Loss or damage, if any, under this policy shall be payable to the mortgagee(s), as scheduled on this policy, as their interest(s) may appear, and this insurance, as to the interest(s) of mortgagee(s) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the described property, nor by any foreclosure or other proceedings or notice of sale relating to the described property, nor by any change in title or ownership of the property, nor by occupation of the premises for purposes more hazardous than are permitted by this policy provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee shall, on demand, pay the same. Provided also, that the mortgagee shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee and, unless permitted by this policy, it shall be noted thereon and the mortgagee shall, on demand, pay the premium for such increased hazard for the term of use thereof; otherwise this policy shall be null and void. Provided also, that in case the mortgagor shall neglect to provide Proof of Loss under the conditions of this policy, the mortgagor within 90 days of notice by this Company shall submit such Proof of Loss.

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee for ten (10) days after notice to the mortgagee of such cancellation and shall then cease and this Company shall have the right, on like notice, to cancel this agreement.

Whenever the Company shall pay the mortgagee any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made.

## 40. ERRORS & OMISSIONS

Any unintentional error or omission made by the Insured in reporting locations or values shall not void or impair the insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery and pays appropriate premium thereon.

## 41. CONFORMITY TO STATUTE

Terms of this policy in conflict with the written laws of any state in which this policy is issued, which are applicable to this policy, are changed to conform to such laws.

## 42. TITLES OF PARAGRAPHS

The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, nor or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

15

MAN
PR9345 (08/06)

## ENDORSEMENT NO.

**This Endorsement, effective** 02/25/2014
**Forms part of Policy No.:** 44269312 - 03
**Issued to:** UNIVERSAL SPC, INC.
**D/B/A:** UNIVERSAL SPC, INC.
**By:** LEXINGTON INSURANCE COMPANY

### ADDITIONAL NAMED INSURED

In consideration of the premium charged at inception, it is hereby understood and agreed that ITEM #1, Named Insured is amended to include the following:

American Precision Co.

Component Specialty Inc.

Total Outsource

UCA Group, Inc.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 49 of 62

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative or
Countersignature (in states where Applicable)

ANI (11/97)

## ENDORSEMENT NO.

**This Endorsement, effective**   02/25/2014
**Forms part of Policy No.:**      44269312 - 03
**Issued to:**   UNIVERSAL SPC, INC.
**D/B/A:**      UNIVERSAL SPC, INC.
**By:**   LEXINGTON INSURANCE COMPANY

### ADDITIONAL NAMED INSURED

In consideration of the premium charged at inception, it is hereby understood and agreed that ITEM #1, Named Insured is amended to include the following:

DGS Technical Services

Tantra Infosolutions, Inc

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 50 of 62

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

                                    _____
                                    Authorized Representative or
                                    Countersignature (in states where Applicable)

ANI (11/97)

## ENDORSEMENT #

**This endorsement, effective 12:01 A.M.,**    02/25/2014
**Forms a part of Policy No.:**    44269312 - 03
**Issued to:**    UNIVERSAL SPC, INC.
**By:**    Lexington Insurance Company

## SERVICE OF SUIT CONDITION

This endorsement modifies insurance provided under the policy:

The following condition is added to this policy:

In the event of our failure to pay any amount claimed to be due hereunder, we, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts 02110 or his or her representative, and that in any suit instituted against us upon this Policy, we will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, we hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this Policy of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 51 of 62

_____
Authorized Representative

PRG 2023 07/05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT #**

This endorsement, effective 12:01 A.M. 02/25/2014
forms a part of Policy No. 44269312 - 03
issued to UNIVERSAL SPC, INC.
by Lexington Insurance Company

## ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 52 of 62

_____
AUTHORIZED REPRESENTATIVE

89644 6-13

# EXHIBIT 2

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 53 of 62

**Johnnie Watson**

| | |
|---|---|
| **From:** | Alvarez, Joshua E [Joshua.Alvarez@aig.com] |
| **Sent:** | Wednesday, May 13, 2015 11:19 AM |
| **To:** | Johnnie Watson |
| **Cc:** | asorto@rtspecialty.com |
| **Subject:** | Claim Closure |
| **Attachments:** | Approved Universal Denial Letter.pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Insured: Universal SPC, Inc
Claim Number: 3038290150US
Date of Loss:  8/13/14
Cause of Loss:  Burglary/Theft
Loss Location:  1901 S Rockwell, Chicago IL 60608

Dear Johnnie Watson,

Please see the attached denial letter for claim#3038290150US for theft/vandalism damages to above loss location.  note that if you have any further information for us to review, please submit that to me and the claim file can be reopened.  I appreciate all the assistance provided in handling your claim, if you have any questions regarding the letter or anything else concerning your claim, feel free to contact me at anytime.

Sincerely

Joshua E. Alvarez
General Adjuster
AIG
Property Field Group
Tel + 1 773-870-1424
Easy Link Fax + 1 8SS-889-9549
Email  joshua.alvarez@aig.com

IMPORTANT NOTICE:
The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities. If you are not the intended recipient, you must not use or disseminate the information. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. If you have received this email in error, please immediately notify me by "Reply" command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by American International Group, Inc. or its subsidiaries or affiliates either jointly or severally, for any loss or damage arising in any way from its use.

ELECTRONICALLY FILED
8/26/2014 4:09 PM
2014-CH-01070
PAGE 60 of 62



AIG Commercial Property
Claims
2: Hudson Street
29ˢᵗ Floor
Jersey City, NJ 07302
www.aig.com

Joshua Alvarez
General Adjuster
Commercial Property Claims
T: 718 640-5031
Joshua.alvarez@aig.com

April 24th, 2014

Universal SPC, Inc
412 North State St.
Elgin, IL 60123

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 55 of 62

Re:  Insured:        Universal SPC, Inc
     Attn:           Johnnie Watson
     Claim no.:      3038290150US
     Loss Location:  1901 S Rockwell
                     Chicago, IL 60608
     Policy:         Lexington Insurance Company
                     44269312-03
     Date of Loss:   08/13/2014

Dear Johnnie Watson:

I am a general adjuster with the Commercial Property Claims Department of AIG Claims, Inc., who is authorized to handle the referenced matter on behalf of Lexington Insurance Company. This letter will serve as a response to the referenced claim that was submitted for theft/vandalism loss sustained to the building located at 1901 S. Rockwell, Chicago IL.

According to the police report obtained pertaining to your loss it was discovered that on or around August 13ᵗʰ 2014, burglars broke into the insured property causing damage to the building. My investigation revealed that this loss was one of several events which took place from a time period extending from June 2014 until March 2015, in which it was determined that the cause of loss is from theft and vandalism to the building.

The property was inspected on April 22nd 2015, and I met with your representative Raj Kumar at the loss location. The inspection revealed that the building was vacant and unoccupied and that there were several damages to the building. Some of the damages found to included: missing copper, damaged piping, broken windows, stolen electrical components, damaged equipment, vandalized contents and debris littered all around the structure.

1



ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 56 of 62

During the inspection I confirmed the timeline of events with Raj Kumar concerning the damages to the building. Mr. Kumar informed me that the building itself was purchased through an acquisition on October of 2013. The building was occupied until March of 2014, when the building was vacated and left unoccupied after the operations were moved to the Elgin location. The building was secured and ADT was monitoring the security of the building with no incidents occurring in the months of April and May of 2014. Mr. Kumar confirmed that starting in June of 2014 until March of 2015 several incidents took place in which there were multiple break-ins occurring and new damages being found each time building was evaluated for damages.

Our review of your policy reveals that the damages to the building are not covered under your claim due to the fact that the building has been unoccupied and or vacant for over 60 consecutive days prior to the first incident taking place. Lexington Insurance Company respectfully disclaims coverage for stolen items and damages caused from vandalism. Please refer to page 50 of 55 in the Manuscript all risk form in Lexington Insurance Company policy number 44269312-03, which states, in part, as follows.

36. VACANY AND/OR UNOCCUPANCY

Unless otherwise endorsed hereto, this Company shall not be liable for loss or damage to any property that has remained vacant or unoccupied for a period of sixty (60) or more days.

As outlined in the preceding policy excerpt, damages to a building which has been vacant or unoccupied for over 60 days is not covered by your policy. We have confirmed that the property was vacant for a period in excess of 60 days prior to the first reported break-in. As such, we are unable to extend coverage for your claim at this time.

If you have any information that you believe would alter our coverage position concerning this matter, please forward it to us for further evaluation. We will review that information without prejudice to this denial, which denial remains effective unless we notify you in writing of a change in our position. This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the policy, or any other policies of insurance issued by Lexington Insurance Company. Lexington Insurance Company expressly reserves all of its rights under the policy, including the right to amend the above disclaimer to include any additional grounds for



ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 57 of 62

disclaimer of coverage, including but not limited to those set forth above. All rights are reserved.

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 100 W. Randolph Street, Suite 15-100, Chicago, Illinois 60601 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

The policy contains a provision which requires that the insured must file any suit or action on the policy within 24 months of the loss or damage which gives rise to the claim, which period shall toll from the date proof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part. In compliance with Illinois Administrative Code §919.80, we hereby advise you that the suit-limitation was tolled from April 15th 2015 to the date of this letter. Therefore, you have until April 24th ,2017 to file any suit or action on the policy with regard to this claim.

Very truly yours,


*Joshua Alvarez*
*General Adjuster*

3

acts of the Insured or of the Company in recovery, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the Insured and the Company in accordance with the policy conditions in regard to losses including deductible application.

## 32. CANCELLATION

A.  This policy may be cancelled at any time at the request of the Insured or it may be canceled by the Company by mailing to the Insured at the address shown in the Declaration hereof written notice stating not less than thirty (30) days thereafter such cancellation shall be effective; ten (10) days if for nonpayment of premium.

B.  The mailing of such notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

C.  Cancellation shall not affect coverage on any shipment in transit, if any, on the date of cancellation. Coverage will continue in force until such property is delivered and accepted.

## 33. PROTECTION MAINTENANCE

It is agreed that any protection provided for the safety of the insured property shall be maintained in good order throughout the currency of this policy and shall be in use at all times out of business hours or when the Insured's premises are left unattended, and that such protection shall not be withdrawn or varied to the detriment of the interests of the Company without their consent.

## 34. INSPECTION AND AUDIT

The Company shall be permitted but not obligated to inspect the Insured's property at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe.

The Company may examine and audit the Insured's books and records at any time during the Policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

## 35. ABANDONMENT

There shall be no abandonment to the Company of any property.

## 36. VACANCY AND/OR UNOCCUPANCY

Unless otherwise endorsed hereto, this Company shall not be liable for loss or damage to any property that has remained vacant or unoccupied for a period of sixty (60) or more days.

## 37. FALSE OR FRAUDULENT CLAIMS

If the Insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void, and all claims hereunder shall be forfeited.

## 38. ASSIGNMENT

Assignment or transfer of this Policy shall not be valid except with the written consent of the Underwriters.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070

14

MAN
PR9545 (08/06)

# EXHIBIT 3

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 59 of 62

# UCA Group

412 North State Street    Elgin, Illinois 60123-2877 U.S.A.    Tel: 847-742-4400  Fax: 847-742-7834

**June 15, 2015**

AIG Commercial Property Claims
21 Hudson Street
29th Floor
Jersey City, NJ 07372

Dear Joshua Alvarez,

This letter is in response to your correspondence denying coverage for the Property claim that occurred at 1901 S. Rockwell, Chicago, IL 60608. The denial references that the location was left unoccupied for a period of 60 days or more; however, that finding is completely incorrect.

Over the last couple of years, property at 1901 S. Rockwell has been used as a storage warehouse. The location was habitually visited at least 3-4 times a week by employees and a supervisor of Universal SPC (UCA Group) At no point was the building left unoccupied or unattended.

On the day of the property inspection conducted by AIG, the principal, Amar Nuggehalli, was called away on an emergency. In his absence, Karai N. Rajkumar, granted access to the inspector. Raj was simply there to provide access to the property, not to conduct a thorough investigation. Raj was not aware of any specifics regarding the claim, the building usage or any timeline of events concerning the claim. His job position is specific to another operation conducted by the insured and his statements should not be validated as accurate. The Inspector should have rescheduled the meeting and conducted the investigation with the appropriate party.

Based on the facts detailed above, we are requesting that the claim be reopened and reinvestigated as soon as possible. We are prepared to work diligently and transparently with the inspector so that the claim is handled in the most appropriate manner.

We appreciate your consideration and look forward to hearing from you.

Sincerely

Johnnie Watson,
HR Coordinator
UCA Group Inc.

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 60 of 62

# EXHIBIT 4

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-11070
PAGE 61 of 62

**Johnnie Watson**

| | |
|---|---|
| **From:** | Alvarez, Joshua E [Joshua.Alvarez@aig.com] |
| **Sent:** | Tuesday, June 16, 2015 1:34 PM |
| **To:** | Johnnie Watson |
| **Subject:** | RE: Claim #. 3038290150US |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |
| | |
| **Categories:** | Red Category |

Hello Mr. Watson,

I have reviewed the letter, stating that the building was not vacant or unoccupied due to having employees visiting the site 3-4 days a week along with having a security detail and various contractors in the building at various times. As per our discussion, having people visit the building does not constitute it being occupied. As per my example, an empty house that is being showed by a realtor various times throughout a day and has a maintenance person check on it does constitute a house being occupied. Unfortunately our position regarding the denial letter still stands at this time. If you have any further questions please contact me at anytime.

Thank You,

Joshua E. Alvarez
General Adjuster
AIG
Property Field Group
Tel + 1 773-870-1424
Easy Link Fax + 1 855-889-9549
Email joshua.alvarez@aig.com

**From:** Johnnie Watson [mailto:johnnie@ucagroup.com]
**Sent:** Tuesday, June 16, 2015 9:34 AM
**To:** Alvarez, Joshua E
**Subject:** Claim #. 3038290150US
**Importance:** High

**Hi Josh,**

**See attached letter in response to the denial of Claim for the property at 1901 S. Rockwell, Chicago. Please keep me posted on what further is required by you regarding this Claim.**

**Thank you,**

*Johnnie Watson*

ELECTRONICALLY FILED
8/22/2016 4:09 PM
2016-CH-10878
PAGE 68 of 68